UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DONNA NELSON                                                                       PLAINTIFF

V.                          NO. 3:17-CV-158-BD

SOCIAL SECURITY ADMINISTRATION                                DEFENDANT

## ORDER

I. **Introduction:**

On August 22, 2014, Donna R. Nelson applied for supplemental security income benefits, alleging disability beginning on October 8, 2013. (Tr. at 45) Ms. Nelson's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Nelson's application. (Tr. at 55) She requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Nelson filed this case seeking judicial review of the decision denying her benefits. For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

II. **The Commissioner's Decision:**

Ms. Nelson's last-insured date was December 31, 2014, so the relevant time period for determination of disability ends on that date. (Tr. at 47) The ALJ found that

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

Ms. Nelson had not engaged in substantial gainful activity since the alleged onset date of October 8, 2013 through December 31, 2014. *Id*.

At step two of the five-step analysis, the ALJ found that Ms. Nelson had the following severe impairments: history of toe surgery in March of 2015, history of seizures/epilepsy, obstructive sleep apnea, status post-surgery for intracranial aneurysms, status post-surgery for degenerative joint disease of the foot, obesity, and depression with anxiety. *Id*.

After finding that Ms. Nelson's impairments did not meet or equal a listed impairment (Tr. at 48), the ALJ determined that Ms. Nelson had the residual functional capacity ("RFC") to perform the full range of work at the light exertional level, with some limitations. She could perform unskilled, rote work activities. (Tr. at 50). She could understand, remember, and follow concrete instructions, and could deal with supervision, co-workers, and the public. *Id*.

The ALJ found that Ms. Nelson was unable to perform any past relevant work. (Tr. at 53) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Ms. Nelson's age, education, work experience and RFC, that she was capable of performing work in the national economy as housekeeper/cleaner and mail clerk. (Tr. at 55) The ALJ determined, therefore, that Ms. Nelson was not disabled during the relevant time-period, that is, October 8, 2013 through December 31, 2014. *Id.*

## III. Discussion:

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    A.   Ms. Nelson's Arguments on Appeal

In this appeal, Ms. Nelson, appearing *pro se*, contends that the ALJ's decision to deny benefits is not supported by substantial evidence. She argues that the ALJ erred by not giving more weight to the opinions of Dan Johnson, Ph.D., Randall Carlton, M.D., and Chris Rowlett, D.P.M. She also alleges ineffective assistance of counsel by her former attorney, David Throesch.[2]

Ms. Nelson suffered a brain aneurysm in 2012, and had surgery to place three clips at the site on October 8, 2013. (Tr. at 310, 350) On November 25, 2013, she was doing well, and a CT scan revealed no residual recurrent aneurysm and no hemorrhage. (Tr. at 353-354) Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992) A brain CT scan in March 2014 was also normal. (Tr. at 357) At a visit to Arkansas Neuroscience Institute

---

[2] Mr. Throesch filed Ms. Nelson's complaint in this Court (Docket entry #2), but then filed a motion to withdraw one month later (Docket entry #8). The Court granted that motion. (Docket entry #16) Ms. Nelson filed her brief, unassisted by counsel.

3

on September 8, 2014, Ms. Nelson complained of headaches, but a brain CT scan showed no evidence of aneurysm recurrence, and the doctor recommended follow-up in "a couple of years." (Tr. at 359) The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

While Ms. Nelson complained of neurological dysfunction due to headaches, seizures, and symptoms from the aneurysm, clinical neurological examinations were normal on September 9, 2013, March 20, 2014, April 23, 2014, July 24, 2014, August 12, 2014, August 18, 2014, August 22, 2014, March 3, 2015, April 20, 2015, August 10, 2015, and December 10, 2015. (Tr. at 362-364, 367, 381, 475, 725, 728, 800, 843, 907, 1014) Normal examination findings are not indicative of a disabling condition. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Likewise, EEG and nerve conduction studies were normal in July of 2014. (Tr. at 377-378)

Victor Briton, M.D., filled out seizure medical-source statements on October 1, 2014 and November 19, 2014. (Tr. at 464, 492). He noted that an EEG in September of 2014 was mildly abnormal but showed no epileptiform activity. (Tr. at 463) Dr. Briton did not indicate the frequency of seizures or how many Ms. Nelson had experienced. *Id*. Ms. Nelson herself testified at the hearing that she could not tell whether she was having seizures and that she had been seizure-free for a year. (Tr. at 74-78) There is no evidence, therefore, that Ms. Nelson had a disabling neurological condition.

Ms. Nelson complained of excessive fatigue and sleepiness and reported use of a CPAP machine in November of 2014, one month before the end of the relevant time-period. (Tr. at 748) She was diagnosed with severe sleep apnea in February 2015, after

4

the relevant time-period, but she did not follow up with any treatment for that condition for almost another year. (Tr. at 1143-1148). By February of 2016, the diagnosis was moderate sleep apnea. Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004) Ms. Nelson did not treat with a sleep specialist or require intervention beyond the CPAP machine.

Ms. Nelson also complained of foot problems. Indeed in June 2014, foot x-rays showed mild hallux valgus with no fracture or arthritis. (Tr. at 710-714) At a May 2014 doctor visit, no diagnosis was made related to her feet. (Tr. at 717) Ms. Nelson was placed in a walking boot after a stress fracture in September of 2014, but x-rays on October 15, 2014 showed that the fracture had completely healed. (Tr. at 742) She was given a Keralog injection and her right foot neuroma improved with that treatment. (Tr. at 745) After the relevant-time period, Ms. Nelson had osteotomy surgery for foot neuroma, but she healed well after surgery. (Tr. at 811, 816, 841, 857) Dr. Rowlett, her surgeon, noted that she was not staying off her foot as ordered. (Tr. at 831)

Ms. Nelson was not compliant with a lifting restriction and resisted taking medication as prescribed at other points in her medical history. (Tr. at 660, 939) A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

State-agency medical consultants reviewed the record and found that Ms. Nelson was capable of work at the medium exertional level. (Tr. at 107, 124) The ALJ gave those opinions little weight because the consultants did not have all of Ms. Nelson's latest

5

medical evidence to review (Tr. at 53); instead, he assigned a more restrictive RFC for light work, demonstrating that he credited some of Ms. Nelson's subjective complaints.

Ms. Nelson submitted three medical opinions after the hearing. Her allegation that the ALJ did not properly consider these opinions is misplaced since the ALJ did not have access to the opinions. The Court will assume that Ms. Nelson means that the Appeals Council should have credited these opinions and remanded the case.

The Appeals Council must consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990)); *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). To be "new," evidence must be more than merely cumulative of other evidence in the record. *See Williams*, 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions). To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. *Id.*; *Bergman*, 207 F.3d at 1069. To qualify as "material," then, the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application).

The medical opinions to which Ms. Nelson cites were all issued well after the date she was last insured: Dr. Rowlett's opinion was from November 22, 2016; Dr. Johnson's

6

opinion was from March 1, 2017; and Dr. Carlton's opinion was rendered on June 20, 2016.

Dr. Rowlett opined that, because of worsening neuropathy, Ms. Nelson could not perform a job where she had to stand or walk for the majority of the day. (Tr. at 20) While Dr. Rowlett did treat Ms. Nelson on many occasions for foot pain, the conditions associated with that pain were treated successfully. Dr. Rowlett's opinion, therefore, is inconsistent with the evidence of medical improvement. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)(the ALJ may discount a treating physician's opinion where he renders inconsistent opinions that undermine his credibility). Furthermore, most of the treatment occurred after the relevant time-period.

Dr. Johnson, a neuropsychologist, examined Ms. Nelson only once. He found that, because of neurological deficits, it would be "literally impossible" for Ms. Nelson to carry out any type of employment duties. (Tr. at 9) Such a hyperbolic and conclusory opinion, from a doctor who examined Ms. Nelson only once, does not persuade the Court that the Appeals Council should have given the opinion weight. It also runs counter to the many normal neurological examinations in Ms. Nelson's relevant medical history.

Finally, Dr. Carlton suggests that Ms. Nelson could not work because she could not drive due to seizures. (Tr. at 25). Again, this opinion was issued a year-and-a-half after the date Ms. Nelson was last insured, and she herself stated at the hearing that she had been seizure-free for a year. Likewise, EEG and CT scans were grossly normal. And Ms. Nelson testified that she could drive. (Tr. at 77, 78)

Ms. Nelson attempts to bootstrap later medical opinions to her conditions during the relevant time-period. Not only were the opinions rendered after the relevant time-period, but also, they are inconsistent with the medical evidence. Ms. Nelson may file a new application if she believes that her conditions after December 31, 2014 call for an award of benefits.

Ms. Nelson claims that attorney David Throesch failed to properly represent her by delaying her hearing before the ALJ. The Administration sets the time and place for hearings, so this argument fails. 20 C.F.R. § 404.936. She also contends that Mr. Throesch was late to the hearing, but the record reflects that the hearing started almost ten minutes before the appointed time, so that argument likewise fails. (Tr. at 64, 152) Ms. Nelson claims that Mr. Throesch erred in his calculation of her last-insured date, and she claims the proper date was December 31, 2015. It is clear from the Administration's paperwork and the ALJ's decision that the date last insured was, in fact, December 31, 2014. (Tr. at 2, 45, 113, 120-121)

In any event, the Court need not determine whether Mr. Throesch's assistance was ineffective. There is no right to effective assistance of counsel in a civil case, and the proper remedy is a legal malpractice suit. *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir. 1988).

## IV. Conclusion:

There is substantial evidence to support the ALJ's decision to deny benefits. The medical opinions do not provide reason to overturn the ALJ's decision, and there is no right to effective assistance of counsel in civil cases. The finding that Ms. Nelson was not

disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, ARRIRMED. The case is dismissed, with prejudice.

IT IS SO ORDERED this 28th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE